# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

| | | |
|---|---|---|
| The Estate of Lamar Ravenell, by his personal representative, Debbie Ravenell | ) ) ) | |
| Plaintiff, | ) ) | C.A. No.: 2:13-cv-00815-PMD |
| v. | ) ) | **ORDER** |
| Pugmill Systems, Inc.; WEG Electric Corporation; and CMI Terex Corporation, | ) ) ) | |
| Defendants. | ) ) ) | |

This matter is before the Court on Defendants CMI Terex Corporation's ("CMI Terex") and Pugmill Systems, Inc.'s ("Pugmill Systems") (collectively "Defendants") respective motions in limine to exclude the opinions of Plaintiff's proposed expert witness Stephen Fournier, P.E. (ECF Nos. 92, 97) (collectively "Motions to Exclude Plaintiff's Expert"), as well as Defendants' separate motions for summary judgment (ECF Nos. 114, 115) (collectively "Motions for Summary Judgment"). The Court held a hearing on October 7, 2014, and entertained argument on all pending motions.[1] At that time, the Court granted Defendants' Motions to Exclude Plaintiff's Expert and Defendants' Motions for Summary Judgment. This written Order serves to memorialize the Court's oral rulings and to resolve any remaining issues taken under advisement.

---

1.    The following motions are also pending before the Court: Plaintiff's Motion in Limine (ECF No. 71), CMI Terex's Motion to Strike Plaintiff's Supplemental Identification of Witnesses (ECF No. 93), CMI Terex's Motion in Limine to Exclude Testimony as to the Character and Habits of Lamar Ravenell (ECF No. 95), CMI Terex's Motion in Limine to Exclude Cumulative Testimony (ECF No. 99), CMI Terex's Motion in Limine to Exclude Opinions of Lay Witnesses (ECF No. 100), Pugmill Systems' Motion in Limine to Exclude Character Evidence (ECF No. 102), Pugmill Systems' Motion in Limine to Exclude Evidence of Other Incidents (ECF No. 105), CMI Terex's Motion in Limine to Exclude Evidence of Other Accidents (ECF No. 106), and CMI Terex's Motion in Limine to Exclude Certain Photos (ECF No. 107). This Order effectively disposes of, or renders moot, all pending motions.

## BACKGROUND

On March 6, 2012, Lamar Ravenell, an employee of Sanders Brothers Construction Company ("Sanders Brothers"), was fatally injured while performing maintenance on an asphalt mixer known as a pugmill. A pugmill is a component of a hot-mix asphalt plant. A hot-mix asphalt plant is an assembly of mechanical and electronic equipment where aggregates, recycled materials, or other additives are blended, heated, dried, and mixed with binder to produce asphalt mixtures meeting specified requirements. Pugmill Systems manufactured this particular pugmill, and WEG Electric Corporation ("WEG") manufactured the pugmill's motor. Pugmill Systems sold the pugmill at issue to CMI Corporation, a predecessor of CMI Terex, which in turn sold the pugmill to Sanders Brothers on or about September 8, 1995, as part of an asphalt plant designed by CMI Terex. The asphalt plant, including the pugmill, was delivered to Sanders Brothers' Summerville, South Carolina location in November 1995.

At the time of the accident, Mr. Ravenell was attempting to clean or otherwise maintain the pugmill's paddles. The covers to the pugmill had been removed, and Mr. Ravenell was positioned inside of the mixer. It is undisputed that prior to entering the machine, Mr. Ravenell did not properly "lockout" and "tagout" the pugmill's energy supply.[2] While Mr. Ravenell was inside of the pugmill, a fellow employee, Marques Raspberry, entered the asphalt plant's energy center to test a different piece of equipment. Mr. Raspberry mistakenly activated and started the pugmill, trapping Mr. Ravenell inside of the pugmill. Due to the injuries he sustained in the

---

2.    In short, to properly lockout and tagout the pugmill, an individual must shut off the pugmill's power sources in the electrical room by turning off the corresponding breaker, or breakers; place a lock and tag on the requisite valves and switches; and place the key to the lock, or locks, in their pocket. Such a procedure is designed to ensure that the pugmill may not be activated inadvertently by another individual. OSHA regulations, as well as Sanders Brothers' operating procedures and training, mandated that Mr. Ravenell "lockout" and "tagout" the pugmill before entering the machine.

accident, and the resulting hemorrhaging and cardiopulmonary arrest, Mr. Ravenell was subsequently pronounced dead at the hospital.

On February 5, 2013, Mr. Ravenell's 56-year-old, disabled widow, Debbie Ravenell ("Plaintiff"), as the personal representative of her husband's estate, instituted this products liability action in state court against Pugmill Systems and WEG.[3]  Plaintiff's Complaint alleged claims as to each Defendant based on theories of: (1) strict products liability, (2) products liability based on negligence, (3) breach of implied warranty of merchantability, and (4) breach of implied warranty of fitness for a particular purpose.  The claims are based on theories of inadequate warnings and improper design.  In particular, Plaintiff alleges that the pugmill was defective because it had neither an emergency stop ("e-stop") nor an interlock device that prevented the machine from operating when the covers were removed, as well as because it lacked adequate warnings.  Plaintiff seeks actual, consequential, and punitive damages in an amount to be determined by a jury.  On March 26, 2013, Pugmill Systems removed the case to this Court on the basis of diversity jurisdiction.  Plaintiff filed an Amended Complaint on May 28, 2013, asserting identical claims against CMI Terex.

In advance of trial, the Parties filed a number of motions in limine, including the present requests to exclude the opinions of Stephen Fournier, P.E. ("Fournier" or "Mr. Fournier") filed by CMI Terex and Pugmill Systems on May 2, 2014, and May 13, 2014, respectively.  Plaintiff responded in opposition to the Motions to Exclude Plaintiff's Expert on May 14, 2014, and Defendants each filed a Reply on May 27, 2014.  Additionally, on May 28, 2014, CMI Terex and Pugmill Systems separately moved for summary judgment on all of Plaintiff's claims.  Plaintiff responded in opposition to the Motions for Summary Judgment on June 16, 2014, and

---

3.    On Plaintiff's motion, and with WEG's consent, the Court dismissed WEG from this action without prejudice on September 4, 2013.  On November 6, 2014, the Court issued an Order approving a settlement of Plaintiff's claims against WEG.

Defendants each filed a Reply on June 26, 2014.  Accordingly, the pending motions are ripe for consideration.  Following extensive briefing and oral argument, the Court now issues the instant Order.

## JURISDICTION

The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, as there is complete diversity of citizenship among the Parties and the amount in controversy exceeds $75,000.  Plaintiff is a citizen and resident of the State of South Carolina.  Pugmill Systems is a corporation organized under the laws of Tennessee with its principal place of business in Tennessee.  CMI Terex is a corporation organized under the laws of Oklahoma with its principal place of business in Oklahoma.  Finally, Plaintiff seeks damages in excess of $75,000.  Therefore, this Court has diversity jurisdiction over this case.

## STANDARD OF REVIEW

### I.      Expert Testimony

The introduction and admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence.  Rule 702 provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  The party offering the expert witness testimony bears the burden of demonstrating "its admissibility by a preponderance of proof."  *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001).

The Supreme Court has recognized that, under Rule 702, trial judges serve as gatekeepers to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). This "basic gatekeeping obligation" identified in *Daubert*, and now embraced by Rule 702, applies not only to scientific testimony but to all expert testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999). The gatekeeping obligation, like other determinations of the admissibility of evidence, requires the trial judge to exercise an informed and broad discretion, "guided by the overarching criteria of relevance and reliability." *Oglesby v. Gen. Motors Corp.*, 190 F.3d 244, 250 (4th Cir. 1999). Although the trial court is granted broad discretion, *see Cooper*, 259 F.3d at 199; *United States v. Gastiaburo*, 16 F.3d 582, 589 (4th Cir. 1994), the rejection of proposed expert witness testimony is the exception rather than the rule, *see SMD Software, Inc. v. EMove, Inc.*, 945 F. Supp. 2d 628, 634–35 (E.D.N.C. 2013) (citing Fed. R. Evid. 702 advisory committee's note (2000)); *see also United States v. Crisp*, 324 F.3d 261, 269–70 (4th Cir. 2003) ("The Supreme Court emphasized in *Daubert* that 'vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" (quoting *Daubert*, 509 U.S. at 596)).

## II.    Summary Judgment

To grant a motion for summary judgment, the court must find that "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). The judge is not to weigh the evidence but rather must determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). All evidence should be viewed in the light most favorable to the nonmoving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 124 (4th Cir. 1990).

"[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991). Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual basis." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Indeed, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322; *see also Hughes v. Bedsole*, 48 F.3d 1376, 1381 (4th Cir. 1995) ("[T]his obligation of the nonmoving party is 'particularly strong when the nonmoving party bears the burden of proof.'" (quoting *Pachaly v. City of Lynchburg*, 897 F.2d 723, 725 (4th Cir. 1990))).

## DISCUSSION

## I.    Defendants' Motions to Exclude Plaintiff's Expert

On July 5, 2013, the deadline for disclosing her expert witnesses, Plaintiff identified Mr. Fournier, of Robson Forensic, Inc., as Plaintiff's proposed expert witness on the issue of liability. Plaintiff also filed a copy of Mr. Fournier's report. Mr. Fournier is Plaintiff's only putative expert witness with regard to pugmill design and safety.[4] As stated in Mr. Fournier's report, the purpose of his investigation was to "determine if one of the causes of the subject incident and fatal injuries sustained was a failure to provide an interlock and/or an E-Stop as part of the pug mill equipment." (Fournier Report, ECF No. 18-1, at 3). Mr. Fournier noted that his report was

---

4.    In his report, Mr. Fournier did not criticize the warnings or set forth alternative warnings and acknowledged that he is not an expert on the subject of warnings. Plaintiff has, however, separately identified Tricia Yount, CPA, MAFF, as a damages expert.

based on the Complaint, a copy of the OSHA file regarding the incident, and his inspection of the subject pugmill on May 10, 2013.

In his report, which has not been amended or supplemented since it was filed, Mr. Fournier summarized his findings and concluded, in relevant part, as follows:

> 2.   The primary cause of Mr. Ravenell's fatal incident was the failure of another Sander's [sic] worker to properly follow the lock-out/tag-out procedure.  The failure to provide a limit switch or interlock on the pug mill covers was also a cause of the incident.  The failure to provide an emergency shut-off (ESO) would not have prevented the incident, but would have likely minimized the injuries sustained by Mr. Ravenell.
> . . . .
> 6.   Use of the above-described interlock system on the covers complies with reasonable engineering controls to eliminate a hazard for a medium classified risk.
> 7.   Use of such an interlock system on the subject pug mill would have prevented the incident involving Mr. Ravenell and the fatal injuries he sustained as a result of the incident.
> 8.   The pug mill supplied by Pug Mill [sic] Systems, Inc. did not have such an interlock system and this made the pug mill defective in manner that was a cause of the incident that fatally injured Mr. Ravenell.
> 9.   If the pug mill were supplied with an emergency stop located near the top of the mixing chamber, a coworker of Mr. Ravenell could have stopped the equipment in a matter of seconds.  While Mr. R[]avenell would have still likely been injured by an unintentional start up of the equipment, the presence and use of an emergency stop would have likely minimized his injuries and he would not have sustained the fatal injuries he did receive.
> 10.  The pug mill supplied by Pug Mill [sic] Systems, Inc. was not provided with an emergency stop system and this made the pug mill defective in manner that was a cause of the fatal injuries sustained by Mr. Ravenell.

(*Id.* at 9).  Mr. Fournier did not provide reasonable, or feasible, alternative designs of the pugmill in his report that included his proposed interlock device or e-stop.

Defendants CMI Terex and Pugmill Systems have each filed a motion in limine, seeking to exclude Mr. Fournier's opinions.  Although Defendants filed separate motions in limine, their arguments are largely the same.  In short, both Defendants assert that Plaintiff has failed to sustain her burden of showing: (1) that Mr. Fournier is qualified to render opinions in this case

and (2) that Mr. Fournier's opinions are reliable.  The Court will address Defendants' arguments

*seriatim*.

### A.    Mr. Fournier is not qualified to provide expert testimony in this case

As a threshold matter, before a witness may be permitted to provide expert testimony, he

must be qualified as an expert.  *Barnthouse v. Wild Dunes Resort, L.L.C.*, 2:08-CV-2546-PMD,

2010 WL 3169358, at *3 (D.S.C. Aug. 5, 2010) (citing *Thompson v. Queen City, Inc.*, CIV.A.

2:00-2359-18-DCN, 2002 WL 32345733, at *1 (D.S.C. July 9, 2002)).  The qualifications of a

witness to render an expert opinion are "liberally judged by Rule 702."  *Kopf v. Skyrm*, 993 F.2d

374, 377 (4th Cir. 1993).  "Inasmuch as the rule uses the disjunctive, a person may qualify to

render expert testimony in any one of the five ways listed: knowledge, skill, experience, training,

or education."  *Id.* (citing *Friendship Heights Assocs. v. Vlastimil Koubek, A.I.A.*, 785 F.2d 1154,

1159 (4th Cir. 1986)).  The Fourth Circuit has stated that:

> Where the expert's qualifications are challenged, the test for exclusion is a strict
> one, and the purported expert must have neither satisfactory knowledge, skill,
> experience, training nor education *on the issue for which the opinion is proffered*.
> One knowledgeable about a particular subject need not be precisely informed
> about all details of the issues raised in order to offer an opinion.

*Id.* (emphasis added) (quoting *Thomas J. Kline, Inc. v. Lorillard, Inc.*, 878 F.2d 791, 799 (4th

Cir. 1989)) (internal quotation marks omitted).

"[T]here are many different kinds of experts, and many different kinds of expertise."

*Kumho Tire Co.*, 526 U.S. at 150.  "An expert's qualification depends on the nature of the

opinion he offers."  *Bombardiere v. Schlumberger Tech. Corp.*, 934 F. Supp. 2d 843, 846

(N.D.W. Va. 2013).  Therefore, under Rule 702, to be "qualified" as an expert, a witness must

have "knowledge, skill, experience, training, or education" in the subject area in which he

intends to testify.  *See* Fed. R. Evid. 702.  "The fact that a proposed witness is an expert in one

area, does not *ipso facto* qualify him to testify as an expert in all related areas." *Shreve v. Sears, Roebuck & Co.*, 166 F. Supp. 2d 378, 391 (D. Md. 2001) (collecting cases). "While the fit between an expert's specialized knowledge and experience and the issues before the court need not be exact, an expert's opinion is helpful to the trier of fact, and therefore relevant under Rule 702, 'only to the extent the expert draws on some special skill, knowledge or experience to formulate that opinion; the opinion must be an expert opinion (that is, an opinion informed by the witness' expertise) rather than simply an opinion broached by a purported expert.'" *Id.* at 392–93 (citations omitted) (quoting *Ancho v. Pentek Corp.*, 157 F.3d 512, 518 (7th Cir. 1998)).

Citing Mr. Fournier's background and experience, both CMI Terex and Pugmill Systems argue that Mr. Fournier is not qualified to offer his opinions and testimony in this case because he lacks the requisite expertise in asphalt plants and pugmills. In her Response, Plaintiff insists that specific expertise is not necessary and that Mr. Fournier's lack of specialization should only "affect the weight of the opinion rather than [its] admissibility." (Pl.'s Resp. 6–7, ECF No. 98). Moreover, Plaintiff contends that Mr. Fournier has the knowledge, education, training, experience, and expertise to testify as an expert in the general field of professional engineering.

At the outset, the Court notes that Mr. Fournier himself indicated that the purpose of his investigation was to "determine if one of the causes of the subject incident and fatal injuries sustained was a failure to provide an interlock and/or an E-Stop as part of the pug mill equipment." (Fournier Report 3). Accordingly, Mr. Fournier's qualifications must be evaluated in light of this purpose and his stated conclusions. *E.g.*, *Bombardiere*, 934 F. Supp. 2d at 846. Having carefully reviewed Mr. Fournier's report, *curriculum vitae* ("CV"), and deposition testimony, as well as the Parties' briefing, the Court concludes, for the reasons detailed further herein, that Mr. Fournier is not qualified to render expert opinions in this case.

According to his CV, Mr. Fournier received a B.S. in Civil Engineering from Northeastern University in 1971 and is a Professional Engineer, holding licenses in a number of states, including South Carolina.  Mr. Fournier is currently an associate with Robson Forensic. In this capacity, Mr. Fournier "[p]rovide[s] technical investigations, analysis, reports, and testimony for failure analysis, and towards the resolution of commercial and personal injury litigation involving: construction in progress, completed construction, time and economic claims, workmanship, code compliance, and personal injury accidents."  (Fournier CV, ECF No. 18-1, at 26).  Additionally, Mr. Fournier's CV indicates that he is a principal with Fournier, Robson & Associates, LLC, and as such, "[p]rovide[s] technical assistance and safety services to the construction industry, industrial clients, homeowners, and insurance companies."  (*Id.*).

Mr. Fournier's status as a licensed Professional Engineer is not, in and of itself, sufficient to qualify him as an expert in this case.  *E.g.*, *Wright v. Case Corp.*, CIV.A. 1:03-CV-1618-JEC, 2006 WL 278384, at *3 (N.D. Ga. Feb. 1, 2006) (collecting cases in which courts refused to qualify engineers as experts without relevant experience and expertise).  Moreover, Mr. Fournier's degree is in civil engineering.  *Thompson*, 2002 WL 32345733, at *1 ("Courts have found that a proffered expert who is an engineer is not necessarily qualified to testify as an expert on any issue within the vast field of engineering."); *see also Shreve*, 166 F. Supp. 2d at 392 (collecting cases in which courts have concluded that expert witness in one area does not automatically qualify as expert witness in another area).  By Mr. Fournier's own admission, a civil engineering degree is a broad-based degree that involves the design and construction of infrastructure and can be distinguished from degrees and fields such as mechanical, electrical, or industrial engineering.  (*See* Fournier Dep. 23:10–19, Apr. 16, 2014, ECF No. 92-2, at 24). Nevertheless, the issues Mr. Fournier was tasked with investigating—and thus, the conclusions

he reached and the opinions he offered—involve topics more appropriately addressed by an electrical, mechanical, or industrial engineer. *See Silva v. Am. Airlines, Inc.*, 960 F. Supp. 528, 531 (D.P.R. 1997). As a part of his studies, Mr. Fournier did not take any classes dealing with the design, manufacture, or operation of an asphalt plant, or the design, manufacture, or operation of an interlock or e-stop. (Fournier Dep. 25:18–26:3, 48:15–19). In short, Mr. Fournier's deposition testimony reveals that, while he may have an engineering degree, he has very little, if any, education or training related to the type of equipment involved in this case. Accordingly, absent evidence of "satisfactory knowledge, skill, [or] experience," *Kopf*, 993 F.2d at 377 (quoting *Thomas J. Kline, Inc.*, 878 F.2d at 799) (internal quotation marks omitted), regarding interlocks, e-stops, pugmills, or asphalt plants, Mr. Fournier must be excluded as unqualified to render the opinions and conclusions contained in his report.

After thorough review and thoughtful consideration, the Court finds that there is nothing in Mr. Fournier's CV or in his deposition testimony that reveals any particular knowledge, skill, or experience related to interlocks, e-stops, pugmills, asphalt plants, or even industrial equipment similar to the equipment involved in the accident in question. To the contrary, Mr. Fournier's CV and deposition testimony reveal quite the opposite. Mr. Fournier himself acknowledged that he has not worked for, consulted for, or been retained by a company that owns, designs, or manufactures asphalt plants or pugmills. Further, Mr. Fournier has not himself designed an asphalt plant, pugmill or other similar mixer, interlock system, or e-stop for any product, and he has not previously spoken about or been published on any related topics. Moreover, he has neither operated an asphalt plant or pugmill nor so much as observed an asphalt plant or pugmill in operation. Indeed, the first time he saw a pugmill was at the site inspection for this litigation. Mr. Fournier has never addressed or attended a seminar regarding asphalt plants, and he does not

know the different types of asphalt plants.  According to Mr. Fournier, he does not hold himself out as an expert on asphalt plants or pugmills.  Thus, not surprisingly, he has never testified as an expert regarding or in any case involving the design, manufacture, or operation of an asphalt plant or pugmill.  *See Hein v. Deere & Co.*, C11-0113, 2013 WL 3816699, at *6 (N.D. Iowa July 22, 2013) (concluding that proposed expert was not qualified to render expert opinion on combine design where he had a degree in mechanical engineering, had ridden once in a combine, had no prior experience in the design of combines or similar equipment, and had no training or education in the design or operation of combines and other agricultural equipment).  Mr. Fournier also admitted in his deposition that he has never been retained to audit the safety of an asphalt plant or of workers at or around an asphalt plant.  Similarly, he has not been hired to audit such an operation, or its equipment, to determine if there was a need for additional safety devices.  Finally, since joining Robson Forensic in 1990, he has not been retained to design or revise a lockout/tagout procedure for any company.

Although Mr. Fournier's CV indicates that he has been qualified as a civil engineer with special knowledge in construction and construction engineering on approximately ninety occasions and that he has investigated over 800 construction-related cases, it appears that most of these matters involved questions related to the design or construction of various structures. Therefore, in offering his opinions in the present case regarding the technical specifications of a pugmill and asphalt plant and the need for an interlock or e-stop,[5] Mr. Fournier is not drawing on

---

5.    While Plaintiff notes that Mr. Fournier previously worked for a precast concrete supplier and has investigated accidents involving concrete-placement equipment, Mr. Fournier's proposed testimony in this matter deals specifically with the design of asphalt equipment.  One can assume that any testimony Mr. Fournier may have offered regarding accidents involving concrete-placement equipment was based on his specific knowledge and experience working in that field.  Here, it is undisputed that Mr. Fournier has not worked in the asphalt or paving industry, and he readily admits that he is not familiar whatsoever with the equipment involved in this accident.  Again, Mr. Fournier admits that he has never even witnessed a pugmill in operation.  Further, Mr. Fournier is not well-versed on the topics of e-stops and interlocks—concepts that serve as the very basis of his conclusions in this case.

any special skill, knowledge, or experience "concerning the particular issue before the [C]ourt," *Shreve*, 166 F. Supp. 2d at 392, or related to "the issue for which [his] opinion is proffered," *Kopf*, 993 F.2d at 377 (quoting *Thomas J. Kline, Inc.*, 878 F.2d at 799) (internal quotation marks omitted). Further, it is readily apparent that Mr. Fournier's opinions and proposed expert testimony are not limited "only to general engineering principles." *Shreve*, 166 F. Supp. 2d at 392.

In sum, based on the foregoing, the Court concludes that Mr. Fournier does not have the requisite skill, knowledge, training, education, or experience to qualify as an expert on e-stops, interlocks, pugmills, or asphalt plants. *See Shreve*, 166 F. Supp. 2d at 393 (concluding that expert was not qualified to render opinion where the expert (1) did not conduct a review of the literature on snow throwers; (2) had never been involved in any industry or government oversight body; (3) had never even owned or operated a snow blower; and (4) but for the litigation, would never have laid a hand on a snow blower). It is clear that Mr. Fournier is not "precisely informed about all details of the issues raised" in this litigation. *Kopf*, 993 F.2d at 377 (quoting *Thomas J. Kline, Inc.*, 878 F.2d at 799) (internal quotation marks omitted). Critically, however, Plaintiff has failed to demonstrate that Mr. Fournier is even "knowledgeable about a particular subject" related to Plaintiff's theory of liability. *Id.* (quoting *Thomas J. Kline, Inc.*, 878 F.2d at 799) (internal quotation marks omitted). Indeed, the record is devoid of any indication that Mr. Fournier has "satisfactory knowledge, skill, experience, training []or education on the issue for which [his] opinion is proffered." *Id.* (quoting *Thomas J. Kline, Inc.*, 878 F.2d at 799) (internal quotation marks omitted). Rather, the entirety of Mr. Fournier's understanding of pugmills, asphalt plants, interlocks, and e-stops is attributable only to his retention in connection with this litigation.

Although the Court is sympathetic to the fact that it may have been difficult to locate an expert familiar with pugmills, it certainly would not have been onerous to find an expert qualified to render opinions on industrial equipment more generally or on possible electrical or mechanical safety devices for heavy equipment. *See Stagl v. Delta Air Lines, Inc.*, 117 F.3d 76, 81 (2d Cir. 1997) ("In determining whether an expert is sufficiently knowledgeable to be admitted to testify, one of the factors that the district court ought to consider is whether other experts exist who are more specifically qualified and who are nonetheless not in the employ of the company or industry whose practices are being challenged.").  With these principles and considerations in mind, the Court concludes that Mr. Fournier is not qualified to provide expert opinions in the area of the design or safety of asphalt plants, pugmills, or their component parts. Accordingly, Mr. Fournier's opinions and testimony shall be excluded.

**B.     *Mr. Fournier's opinions are not reliable***

Defendants next argue that Mr. Fournier's report and opinion testimony are inadmissible because Mr. Fournier's opinions are not sufficiently reliable.  Although Plaintiff argues that Mr. Fournier's report and opinions are relevant, Plaintiff does not specifically address the reliability of Mr. Fournier's opinions and conclusions.  Notwithstanding the Court's conclusion that Mr. Fournier is not qualified as an expert regarding the design or safety of asphalt plants, pugmills, or their component parts, to the extent Mr. Fournier could arguably be qualified to render one or more of the opinions reflected in his report, the Court will briefly address the reliability, or lack thereof, of the opinions and conclusions he reached in this case.

Rule 702 imposes an obligation on the trial judge to ensure that any expert testimony grounded in scientific, technical, or other specialized knowledge "is not only relevant, but reliable." *Daubert*, 509 U.S. at 589.  In *Daubert*, the Supreme Court provided a list of four non-

exclusive factors to consider in assessing the reliability of an expert's testimony: (1) whether the expert's theory or technique can be, and has been, tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error when the technique or theory is applied; (4) and whether the theory or technique enjoys "general acceptance" in the relevant community. *Id.* at 593–94. The *Daubert* factors are not exclusive, and the trial judge may consider any factors that speak to the overarching inquiry into the testimony's scientific reliability. *Id.* at 593.

Applying the *Daubert* factors to Mr. Fournier's report and deposition testimony, the Court concludes that Mr. Fournier's purported expert opinions lack sufficient indicia of reliability to be admitted into evidence under Rule 702. Most notably, despite contending that an interlock system or e-stop would have prevented the accident or minimized Mr. Ravenell's injuries, Mr. Fournier did not prepare a reasonable alternative design for his proposed interlock system or e-stop or otherwise subject his theory to testing of any kind.[6] Although Plaintiff contends that actual hands-on testing would have been impractical, and thus, is not required for an expert's opinions to be reliable, "the absence of testing is a consistent factor in court decisions excluding expert testimony." *McGee v. Evenflo Co.*, 5:02-CV-259-4(CAR), 2003 WL 23350439, at *9 (M.D. Ga. Dec. 11, 2003) (collecting cases). This is especially true in cases dealing with product design. *Id.* Further still, Mr. Fournier did not produce a prototype of his proposals and has not so much as reduced his conceptual ideas or suggestions to design drawings. In fact, Mr. Fournier admitted in his deposition that he could not so much as identify or explain what types of interlocks he would use or where the interlocks would be located.

---

6.     Mr. Fournier also acknowledged that, in the course of his investigation, he did not review any depositions or interview any witnesses. Moreover, Mr. Fournier noted that although he did not have the opportunity or occasion to inspect the pugmill while it was operating, he nevertheless did not examine the entire asphalt plant, inspect an exemplar asphalt plant, review any product manuals, or conduct any secondary or Internet research regarding asphalt plants.

Accordingly, aside from the fact that Mr. Fournier has not actually tested his opinions or conclusions, it is difficult to even categorize his theory as capable of testing. Indeed, Mr. Fournier himself stated that he is not aware of any testing of an interlock system on a pugmill. Also troubling is Mr. Fournier's testimony that, in the course of his investigation, he did not so much as rule out alternate causes of the accident. *Oglesby*, 190 F.3d at 250 (concluding that expert's testimony did not have sufficient indicia of reliability under *Daubert* where the expert's theory did not, "as a matter of logic, . . . eliminate other equally plausible causes" of the incident in question). Instead, Mr. Fournier has merely proffered that the absence of an interlock system or e-stop was a cause, but not the primary cause, of Mr. Ravenell's death.

Additionally, there is no evidence or indication that Mr. Fournier has published his theoretical alternative designs or submitted them for any method of peer review. Therefore, because Mr. Fournier's opinions are merely untested and imprecise proposals, the "error rate" of a pugmill with the recommended e-stop or interlock device is unquantifiable. Although difficult, if not impossible, to determine, such an "error rate" is potentially significant. Indeed, Mr. Fournier even stated in his report that an e-stop would not have prevented the accident in question.

Finally, Mr. Fournier does not point to any industry standards or literature that reference his theoretical design modifications. While Plaintiff asserts that Mr. Fournier referred to the National Safety Council's Accident Prevention Manual in attempting to evaluate the safety of the pugmill and determine whether additional safety features should be added, Plaintiff's argument misses the mark. Notably, Mr. Fournier acknowledged in his deposition that he does not know which standards apply to pugmills. Yet still, craving reference to general safety standards does not in any way indicate that Mr. Fournier's specific opinions are reliable or that his suggested

design alternatives or additions are actually feasible or reasonable.  Although Mr. Fournier testified in his deposition that Dust Master produced pugmills with his proposed safety features, it appears that he is unsure both when such models were produced and whether his proposed safety features were available in 1995.  Therefore, it does not appear from the record that either Mr. Fournier's theoretical proposals or his opinions are "generally accepted."  Instead, it is clear from his testimony that Mr. Fournier has done little more than "conceptualize his proposed modifications."  *McGee*, 2003 WL 23350439, at *13.  *Daubert*'s reliability prong, however, requires more than "conceptualizing possibilities."  *Id.*

Accordingly, the Court concludes that neither Mr. Fournier's opinions nor the methodology he employed are sufficiently reliable.  *Cooper*, 259 F.3d at 200 ("A reliable expert opinion must be based on scientific, technical, or other specialized knowledge and not on belief or speculation, and inferences must be derived using scientific or other valid methods." (citing *Oglesby*, 190 F.3d at 250)).  Mr. Fournier's opinions and conclusions are not based on or derived from any specialized knowledge in a relevant field and have not been subjected to any form of scientific or other testing.  *See Kumho Tire Co.*, 526 U.S. at 152 (explaining that in performing its gatekeeping role, the court must ensure "that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field").  Assuming *arguendo* that Mr. Fournier is or could be deemed qualified to render expert opinions in this case, Plaintiff has failed to demonstrate that these opinions are reliable or that they would in any way aid the trier of fact.

* * *

In sum, for the foregoing reasons, as well as those stated at the October 7, 2014 hearing, the Court grants Defendants' Motions to Exclude Plaintiff's Expert and hereby excludes the

opinions and testimony of Plaintiff's proposed expert, Mr. Fournier.  At the hearing, Plaintiff's counsel asked that Plaintiff be allowed to locate and identify a new putative expert witness in the event the Court were to grant Defendants' Motions to Exclude Plaintiff's Expert.  However, because the deadline for Plaintiff's identification of expert witnesses expired on July 5, 2013, and because affording Plaintiff such an opportunity would seriously prejudice Defendants, the Court will not entertain such a request.  Therefore, if Plaintiff is to withstand Defendants' Motions for Summary Judgment, she must do so without an expert.

## II.     Defendants' Motions for Summary Judgment

CMI Terex and Pugmill Systems have separately moved for summary judgment on all of Plaintiff's products liability claims.  Again, Plaintiff asserts causes of action against both Defendants for strict products liability, negligence, breach of the implied warranty of fitness for a particular purpose, and breach of the implied warranty of merchantability, based on theories of inadequate warnings and improper design.  However, the Court need not separately address Plaintiff's individual causes of action and theories of liability, because Plaintiff's claims are critically deficient in at least three shared respects.  *See, e.g.*, *Branham v. Ford Motor Co.*, 701 S.E.2d 5, 8 (S.C. 2010) (concluding that because "all products liability actions, regardless of the stated theory, have common elements . . .  When an element common to multiple claims is not established, all related claims must fail." (citing *Madden v. Cox*, 328 S.E.2d 108, 112 (S.C. Ct. App. 1985))); *Holland ex rel. Knox v. Morbark, Inc.*, 754 S.E.2d 714, 721 (S.C. Ct. App. 2014) ("All products liability claims share common elements . . . ."), *reh'g denied* (Mar. 10, 2014).

Under South Carolina law,[7] "[i]n any products liability action, a plaintiff must establish three things: (1) he was injured by the product; (2) the product was in essentially the same

---

[7].    Mr. Ravenell's injuries were sustained in South Carolina, and the instant action was removed based on the diversity of citizenship among the Parties.  *See* 28 U.S.C. § 1332.  Therefore, this Court must apply the substantive

condition at the time of the accident as it was when it left the hands of the defendant, and (3) the injury occurred because the product 'was in a defective condition unreasonably dangerous to the user.'"  *Graves v. CAS Med. Sys., Inc.*, 735 S.E.2d 650, 658 (2012) (quoting *Madden*, 328 S.E.2d at 112), *reh'g denied* (Dec. 12, 2012); *see Branham*, 701 S.E.2d at 8 (quoting *Madden*, 328 S.E.2d at 112).  A plaintiff must establish each of these three elements "regardless of whether the theory under which he seeks to recover is strict liability, breach of warranty, or negligence."  *Dema v. Shore Enters., Ltd.*, 435 S.E.2d 875, 876 (S.C. Ct. App. 1993).

As an initial matter, the Court concludes that without the benefit and support of expert testimony on the ultimate issue of liability,[8] Plaintiff's claims fall short as a matter of law.  At the very least, absent expert testimony, Plaintiff cannot establish that the accident, and Mr. Ravenell's resulting injuries and death, occurred because the pugmill was "in a defective condition unreasonably dangerous to the user."  *Branham*, 701 S.E.2d at 8; *see Sunvillas Homeowners Ass'n, Inc. v. Square D Co.*, 391 S.E.2d 868, 871 (S.C. Ct. App. 1990) ("A products liability case may be brought under several theories including negligence, warranty, and strict liability.  In each theory the plaintiff must establish the product was in a defective condition." (citing *Madden*, 328 S.E.2d 108)).  To establish defectiveness in a technically complex case, a plaintiff must come forward with relevant and reliable expert testimony.  *See Graves*, 735 S.E.2d at 659 (discussing the need for expert testimony in complex cases).  Here, questions related to the design and operation of a pugmill necessarily require scientific,

---

law of South Carolina.  *See Oglesby*, 190 F.3d at 251; *see also Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941) (holding that the federal court applies the state court's choice-of-law rules in a diversity action); *Lister v. NationsBank*, 494 S.E.2d 449, 454 (S.C. Ct. App. 1997) (holding that under South Carolina choice-of-law principles the "substantive law governing a tort action is determined by the state in which the injury occurred" (citations omitted)).

8.    Although Plaintiff identified a damages expert, Mr. Fourier was Plaintiff's only proposed expert on the issue of liability.  Nevertheless, as noted above, Mr. Fournier did not address or seek to offer an opinion related to Plaintiff's warnings claims.

specialized, or technical testimony.[9]  Thus, the lack of reliable expert testimony on the issue of liability, or more specifically, the alleged defectiveness of the pugmill, is fatal to Plaintiff's claims.  *See Schrom v. Budget Rent-A-Car Sys., Inc.*, No. CIV.A.6:04-21788-HFF, 2005 WL 3058454, at *5 (D.S.C. Nov. 14, 2005) (quoting *Bragg v. Hi Ranger Inc.*, 462 S.E.2d 321, 326 (S.C. Ct. App. 1995)); *Graves*, 735 S.E.2d at 658–59; *see also Oglesby*, 190 F.3d at 249 ("[A] plaintiff may not prevail in a products liability case by relying on the opinion of an expert unsupported by any evidence such as test data or relevant literature in the field." (quoting *Alevromagiros v. Hechinger Co.*, 993 F.2d 417, 422 (4th Cir. 1993) (internal quotation marks omitted)).  Accordingly, the Court concludes that Plaintiff has failed to demonstrate that the pugmill was "in a defective condition unreasonably dangerous to the user."  *Branham*, 701 S.E.2d at 8.  Although this critical deficiency alone warrants entry of summary judgment in favor of Defendants as to all of Plaintiff's claims, the Court will nevertheless note two additional deficiencies.

Similarly, Plaintiff has failed to present the requisite evidence of a feasible, or reasonable, alternative design.  As the South Carolina Supreme Court held in *Branham*, "the exclusive test in a products liability design case is the risk-utility test with its requirement of showing a feasible alternative design."  701 S.E.2d at 14.  Thus, with design-defect claims, "proof of a reasonable alternative design is necessary to establish whether a product is unreasonably dangerous."  *Holland ex rel. Knox*, 754 S.E.2d at 720.  Notwithstanding this mandate, Plaintiff has not offered, via her putative expert or otherwise, evidence of a feasible alternative design for the

---

9.    While the South Carolina Supreme Court recently signaled in *Graves* that some measure of circumstantial evidence may, in certain cases, be sufficient to withstand summary judgment, this Court, like the court in *Graves*, has little trouble concluding that expert testimony is required under these circumstances.  *See Graves*, 735 S.E.2d at 658 ("In this case, however, we need not determine what quantum of circumstantial evidence of a design defect is necessary to withstand summary judgment because the lack of expert testimony is nevertheless dispositive of the Graves' claim.").

pugmill with either the proposed interlocks or e-stops . Instead, Plaintiff's proposed expert, who has since been excluded, simply proposed a theoretical or conceptual alternative. *See id.* ("Because a conceptual design is insufficient to establish a reasonable alternative design, we find Holland's claim for design defect fails as a matter of law."). Therefore, Plaintiff's design-defect claims must fail. Further, because "[a]ll products liability claims share common elements . . . [Plaintiff's] failure to establish a reasonable alternative design in [her] design defect claim prevents [Plaintiff] from succeeding on [her] failure to warn claim as a matter of law." *Id.* at 721. Accordingly, entry of summary judgment in favor of Defendants is appropriate both with regard to Plaintiff's design-defect claims and her warnings-based claims for want of a reasonable alternative design.

Finally, Plaintiff has not carried her burden of demonstrating that either the pugmill's defective design or its inadequate warnings proximately caused Mr. Ravenell's death. Under South Carolina law, a products liability plaintiff must prove that the product defect proximately caused the injury in question. "Proximate cause requires proof of both causation in fact and legal cause, which is proved by establishing foreseeability." *Phillips v. Morbark, Inc.*, 481 F. Supp. 2d 461, 464 (D.S.C. 2007) (quoting *Bray v. Marathon Corp.*, 588 S.E.2d 93, 95 (S.C. 2003)) (internal quotation marks omitted). This causation requirement, like the common elements referenced above, applies to all products liability theories. *E.g.*, *Rife v. Hitachi Const. Mach. Co.*, 609 S.E.2d 565, 569 (S.C. Ct. App. 2005) ("Under any products liability theory, a plaintiff must prove the product defect was the proximate cause of the injury sustained." (citing *Bray*, 588 S.E.2d at 93; *Small v. Pioneer Mach., Inc.*, 494 S.E.2d 835, 842 (S.C. Ct. App. 1997))); *see also Young v. Tide Craft, Inc.*, 242 S.E.2d 671, 675 (S.C. 1978) (stating that "[p]roximate cause is an essential element common to all three theories of recovery" where "actions were based on

alternative theories of negligence, breach of implied warranty, and strict liability in tort"). Likewise, the failure to establish proximate causation is equally fatal to both design- and warnings-based claims. *See Morehouse v. Louisville Ladder*, No. CIV.A. 3:03-887-22, 2004 WL 2431796, at *9 (D.S.C. June 28, 2004); *Anderson v. Green Bull, Inc.*, 471 S.E.2d 708, 711 (S.C. Ct. App. 1996). Moreover, "[c]ausation cannot be proved and a plaintiff may not prevail in a products liability case by relying on the opinion of an expert unsupported by evidence such as test data or relevant literature in the field." *Goodman v. Revco Disc. Drug Centers, Inc.*, No. 3:03-CV-2657-MBS, 2005 WL 6740407, at *5 (D.S.C. Aug. 18, 2005) (citing *Oglesby*, 190 F.3d at 249). In the present case, the Court has excluded Plaintiff's only proposed expert witness on the issue of liability, and Plaintiff has failed to otherwise adduce sufficient evidence "which rises above mere speculation or conjecture." *Phillips*, 481 F. Supp. 2d at 464 (quoting *Armstrong v. Weiland*, 225 S.E.2d 851, 853 (S.C. 1976)) (internal quotation marks omitted). Therefore, Plaintiff's claims collectively fall short for lack of evidence regarding proximate causation.

Again, because Plaintiff's various products liability claims are critically, and collectively, deficient in at least these three respects, the Court need not individually address Plaintiff's separate causes of action or theories of relief. In short, the Court concludes that without the support of reliable expert testimony on the issue of the pugmill's purported defectiveness, without a reasonable alternative design, and without sufficient evidence as to proximate causation, Plaintiff cannot survive summary judgment. Accordingly, the Court hereby grants CMI Terex's and Pugmill Systems' respective Motions for Summary Judgment.

## CONCLUSION

For the foregoing reasons, as well as those stated at the October 7, 2014 hearing, it is

**ORDERED** that Defendants' Motions to Exclude Plaintiff's Expert and Motions for Summary

Judgment are **GRANTED**.

**AND IT IS SO ORDERED.**

PATRICK MICHAEL DUFFY
United States District Judge

**December 15, 2014**
**Charleston, South Carolina**